**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Leo CRUTCHFIELD,**
**Defendant-Appellant.**

**No. 75–3655.**

United States Court of Appeals,
Ninth Circuit.

Jan. 5, 1977.

---

I. R. Ashleman, II (argued), Las Vegas, Nev., for defendant-appellant.

James Duff, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before BARNES and GOODWIN, Circuit Judges, and EAST,* District Judge.

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

**EAST, District Judge:**

Leo Crutchfield (Appellant) appeals his judgment of conviction and sentence on one count of violating 18 U.S.C. § 201(b)(1).[1] We note jurisdiction under 28 U.S.C. § 1291 and reverse.

## THE CASE

On March 7, 1974, Appellant and two others were named in a seventeen count indictment alleging violations of federal bribery and conspiracy statutes. Appellant was named in the conspiracy count and six of the substantive counts.

Appellant's case was severed from that of his co-defendants, and prior to trial, the Government dismissed the conspiracy count and two of the six bribery counts.

After a three day jury trial, Appellant was found guilty on one count of giving a $1,500 bribe to an agent of the Internal Revenue Service and was acquitted on the three remaining bribery counts.

## ISSUE

Appellant primarily urges a single issue on review:

Did the District Court err in refusing to instruct the jury, as requested, on the lesser-included offense of giving a gratuity to a public official?[2]

## FACTS

Consideration of this issue necessitates the following review of the facts:

In August, 1972, Internal Revenue Agent Joe Turner was assigned to audit Appellant's 1971 personal income tax return and the corporate tax return filed by Nevada Car Corporation for the fiscal year beginning April 1, 1970. Nevada Car Corporation was a rent-a-car company of which the Appellant was part owner. The opening audit interview between Agent Turner and the Appellant was conducted in the lobby of the La Concha Motel in Las Vegas, Nevada on September 28, 1972. Ed Losacker, the accountant for Nevada Car Corporation, was present at this interview and Turner gave him an Information Document Request form which listed documents which were needed to conduct the audit. During the initial audit interview, the Appellant and Turner also engaged in a general discussion about Turner's background, his family and his feelings about women. Turner testified that at this point Appellant made the statement that it would be worth $2,000 to him not to have the audit conducted. However, Turner stated that he did not think Appellant was offering him a bribe given the nature of the conversation. He thought the statement was made in jest and did not report it to his superiors until March 1, 1973. This alleged offer of a bribe formed the basis for count two of the indictment, upon which Appellant was acquitted.

The audit was delayed until February, 1973 because Agent Turner was assigned to other duties. On February 21, 1973, Appellant informed Turner that Losacker had

---

1. Section 201(b)(1) provides:
   "(b) Whoever . . . corruptly gives, offers or promises anything of value to any public official or . . . offers or promises any public official . . . to give anything of value to any other person or entity, with intent—
   "(1) to influence any official act . . ."
   "Shall be fined . . . or imprisoned . . . or both . . . ."

2. 18 U.S.C. § 201(f) provides:
   "(f) Whoever, otherwise than as provided by law for the proper discharge of official duty, . . . gives, offers, or promises anything of value to any public official, former public official, . . . for or because of any offi-

cial act performed or to be performed by such public official, former public official, . . . ."
   "Shall be fined . . . or imprisoned . . . or both . . . ."
   In refusing the requested instruction, the District Court stated:
   "On a brief scanning of your proposed instructions, I find them to be substantially correct, in the event I thought the evidence justified an instruction with respect to the lesser offense under 201(f). But I think that under the evidence presented, this defendant is either guilty or not guilty of 201(b)(1)." R.T. at 172.

been dismissed and that he (the Appellant) would be handling the audit personally. Appellant also suggested that he and Turner forget the audit, get some women and go out on the town. Turner and Appellant agreed to meet at 9:00 a. m. on March 1 at the La Concha Motel to resume the audit.

When Turner arrived at the motel on March 1, he and the Appellant went into the coffee shop where they continued their conversation. Turner testified in substance that Appellant then offered him "female companionship" and free use of a boat and an automobile. This formed the basis for count three of the indictment, upon which Appellant was acquitted.

Turner testified that he then accompanied Appellant to another motel where they were to meet someone who would explain to Turner the financial condition of Appellant's company. Instead they met a young woman who was dressed only in a "brief nightie." Turner stated that after he pushed his way out of the room, the Appellant said, "You want that piece of ass there in the room and I want out of this audit." Appellant then drove Turner back to the La Concha Motel and they proceeded to their next appointment in continuing the audit.

Later Turner reported the incident to his superiors and a decision was made to have Turner's future meetings with Appellant electronically monitored in order to corroborate Turner's story. Thereafter Turner contacted Appellant and arranged a meeting for March 13, 1973 at the La Concha Motel to continue the audit.

The March 13th meeting lasted almost three and one-half hours and the transcript of and testimony related to that meeting are of particular significance. Although Appellant brought certain records of Nevada Car Corporation with him to the meeting, Turner testified that they were incomplete and did not contain all the documents listed in the Information Document Request form supplied by him to Losacker.

During the meeting, Turner advised Appellant that the accountant Losacker was incompetent and that the records were shoddy and incomplete. Appellant steadfastly denied any wrongdoing and made repeated offers to work with Turner in bringing the records up to date. Appellant offered to call Losacker and Turner testified that he remembered talking to Losacker over the telephone, during which conversation Losacker offered, and Turner discouraged, his assistance in straightening out the records. In fact, Turner offered to prepare Appellant's returns indicating that it would "cost" Appellant to get the records brought up to date, and even suggested that Appellant work with him rather than Losacker. On cross-examination, Turner admitted that he was prepared to help Appellant reconstruct the records and prepare the necessary tax returns so the audit could be completed.

Finally, toward the end of the March 13th meeting, Appellant offered Turner money to "straighten the damn thing out." This offer formed the basis for count four of the indictment, upon which the Appellant was acquitted. After some negotiation over the price to be paid, they settled on a figure of $1,500. This amount was paid to Turner on March 15 during another meeting at the motel, and the ensuing conversation was again recorded. This payment formed the basis for count five of the indictment, upon which Appellant was found guilty.

## DISCUSSION

Fed.R.Crim.P. 31(c) provides in pertinent part, "The defendant may be found guilty of an offense necessarily included in the offense charged . . ." and, although the rule was initially intended to assist the Government in cases wherein its proof fell short of that expected, it is settled that the defendant has a right to an instruction on a lesser-included offense under certain circumstances. *Stevenson v. United States,* 162 U.S. 313, 316, 16 S.Ct. 839, 40 L.Ed. 980 (1896); *Olais-Castro v. United States,* 416 F.2d 1155 (9th Cir. 1969); *United States v. Comer,* 137 U.S.App.D.C.

214, 421 F.2d 1149 (1970).[3] The Supreme Court in discussing the availability of a lesser-included offense instruction in *Sansone v. United States,* 380 U.S. 343, 349–50, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965), stated:

"Thus, '[i]n a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifie[s] it . . . [is] entitled to an instruction which would permit a finding of guilt of the lesser offense.' *Berra v. United States,* [351 U.S. 131, 134, 76 S.Ct. 685, 100 L.Ed. 1013 (1956)]. *See Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 [1896]. . . . A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense. *Berra v. United States, supra; Sparf v. United States,* [156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895)]."

■ Therefore, in order to be entitled to the instruction, the defendant must establish two prerequisites: first, that the offense on which the instruction is sought is a lesser-included offense in the offense charged, and second, that the jury could rationally conclude that the defendant was guilty of the lesser but not the greater offense. *United States v. Comer, supra* at 1153.

■ When proof of some but not all of the elements of the crime charged would support a conviction of another offense, the latter may be termed a "lesser-included" offense. "Stated differently, the [lesser] offense must not require some additional element not needed to constitute the greater offense." *Olais-Castro v. United States, supra* at 1157. That is, the "lesser offense must be included within but not, on the

facts of the case, be completely encompassed by the greater." *Sansone v. United States, supra* 380 U.S. at 350, 85 S.Ct. at 1009.

■ The Government concedes, as it must, that § 201(f) is a lesser offense included within § 201(b)(1). "[T]he behavior prohibited by § 201(f) embraces those cases in which all of the essential elements of the bribery offense (corrupt giving) stated in § 201(b) are present except for the element of specific intent to influence an official act . . . ." *United States v. Irwin,* 354 F.2d 192, 196 (2d Cir. 1965), *cert. denied,* 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966). "Therefore the correct relationship between § 201(b) and § 201(f) is that § 201(f) is a lesser-included offense of § 201(b)." *United States v. Umans,* 368 F.2d 725, 730 (2d Cir. 1966), *cert. dismissed,* 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967).

■ Having established that the offense on which the instruction was sought was a lesser-included offense in that charged, the defendant must still show that the evidence justified the instruction. *Sansone v. United States, supra; Stevenson v. United States, supra.* In order to properly deny an instruction on a lesser-included offense in a bribery case such as this one, the trial court must be able to say that a jury finding of no specific intent would be irrational. To do this, the court must not only review the evidence to ascertain if there is an actual conflict in the evidence presented as to the disputed element, but it must also "appraise all the testimony and evidence to determine whether it is capable of more than one reasonable inference." *United States v. Comer, supra* at 1154. *See Driscoll v. United States,* 356 F.2d 324, 327 (1st Cir. 1966), *vacated on other grounds,* 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968).

The terms "necessarily included" and "lesser-included" offense "are used interchangeably by the courts." *Olais-Castro v. United States, supra* at 1157.

---

**3.** "The Notes of the Advisory Committee state that Rule 31(c) 'is a restatement of existing law.' The preceding 'lesser offense' statutes were Act of June 1, 1872, 17 Stat. 196, R.S. § 1035; 18 U.S.C. § 565." *Berra v. United States,* 351 U.S. 131, 134 n. 6, 76 S.Ct. 685, 100 L.Ed. 1013 (1956).

In *Stevenson v. United States, supra,* the issue was whether the defendant in a federal prosecution for murder on an Indian reservation was entitled to an instruction on the lesser-included offense of manslaughter. As here, the dispute was over the state of mind of the defendant at the time he committed an act which constituted the remaining elements of both the lesser and greater offenses. The court stated:

"The evidence as to manslaughter need not be uncontradicted or in any way conclusive upon the question; so long as there is some evidence upon the subject, the proper weight to be given it is for the jury to determine. . . . The evidence might appear to the court to be simply overwhelming to show that the killing was in fact murder, and not manslaughter . . . and yet, so long as there was some evidence relevant to the issue of manslaughter, the credibility and force of such evidence must be for the jury, and cannot be [a] matter of law for the decision of the court." *Stevenson v. United States, supra,* 162 U.S. at 314, 315, 16 S.Ct. at 839.

Moreover, the court reiterated the importance of the jury function when it continued:

"A judge may be entirely satisfied, from the whole evidence in the case, that the person doing the killing was actuated by malice . . . and yet, if there be any evidence fairly tending to bear upon the issue of manslaughter, it is the province of the jury to determine from all the evidence what the condition of mind was, and to say whether the crime was murder or manslaughter." *Id.* at 323, 16 S.Ct. at 843.

█ The facts of this case establish that there was evidence offered by the Appellant which created a disputed factual element of specific intent. Although the Appellant did not testify, he placed in evidence portions of the tape of the March 13th conversation between himself and Turner which tended to dispute the evidence of-

fered by the Government as to specific intent. Moreover, cross-examination of Agent Turner tended to impeach, contradict and explain Turner's testimony. This is sufficient to create a disputed factual element. *Cf. Driscoll v. United States, supra* at 327, 328.

Further, the evidence offered by the Government is susceptible to more than one reasonable interpretation. The Government claims that the Appellant's remarks on September 28, 1972 regarding payment of money to escape the audit and his suggestion on February 21, 1973 that he and Turner forget the audit and go out on the town manifest the requisite specific intent. However, even Turner took these remarks in jest and did not report them to his superiors until March 1, 1973.

The testimony regarding and the transcript of the March 13th conversation (the evidence upon which the Government relies most heavily) are certainly susceptible to more than one rational inference. There are Appellant's repeated protestations that he had done nothing unlawful and his offers to assist, personally and through his accountant, in gathering the material necessary to complete the audit. Moreover, Turner's criticism of the competency of the Appellant's accountant coupled with Turner's offers to work with Appellant in reconstructing the records necessary to complete the audit could have led the jury to reasonably conclude that the money offered on March 13 and paid on March 15 was intended to reward Turner for the extra work that would have been necessary to complete the audit.

To be sure, the jury's verdict of guilty on count five is supported by relevant evidence. However, in our system of jurisprudence, the resolution of the factual issues is not the province of the court but that of the jury under proper instructions.

█ We conclude that the District Court erred in refusing to give the lesser-included offense instruction.[4]

---

4. *United States v. Harary,* 457 F.2d 471 (2d Cir. 1972), relied on heavily by the Government, is

distinguishable. In *Harary,* the trial court, in a prosecution for bribery under § 201(b), in-

Appellant raises two other arguments which are without merit. His claim that the special prosecutor was not lawfully appointed to appear before the grand jury is answered by *United States v. Alessio,* 528 F.2d 1079 (9th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976); and *United States v. Zuber,* 528 F.2d 981 (9th Cir. 1975). His objection to the tape recordings, made with the consent of Turner, was not well taken. *Holmes v. Burr,* 486 F.2d 55 (9th Cir.), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744 (1973).

We adopt the teaching of Judge Leventhal in *United States v. Huff,* 143 U.S.App.D.C. 163, 442 F.2d 885, 891 (1971):

"When the trial judge has failed to take into account the reasonable possibility of a lesser offense, the indicated procedure is to remand for a new trial with a properly instructed jury, with the authority in the trial judge, after hearing both parties and obtaining the Government's consent, to enter a judgment of the lesser offense if he considers this course in the interest of justice."

The judgment of conviction and sentence entered by the District Court on November 21, 1975 is reversed and the case remanded to the District Court for further proceedings in accordance herewith.

REVERSED AND REMANDED.

structed the jury on the lesser-included offense of § 201(f) over the objection of the defendant. The Court of Appeals for the Second Circuit reversed the conviction holding that the Government was not entitled to the instruction since it was not justified by the evidence. However, in *Harary,* the defendant had conceded all of the elements of the offense of bribery including specific intent and relied solely on the defense of entrapment. *Id.* at 476. Thus, the jury could not rationally have found the defendant guilty of the lesser but not the greater offense.

It is true, of course, that in the instant case Appellant obliquely relied on the defense of entrapment as to count five of the indictment. However, in so doing, he was neither required to concede all the elements of the offense charged, *United States v. Demma,* 523 F.2d 981 (9th Cir. 1975), nor did he do so.