**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Francis SKINNER, Defendant-Appellant.**

**No. 81–1220.**

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 15, 1981.

Decided Feb. 18, 1982.

Rehearing Denied March 29, 1982.

David M. Heller, Phoenix, Ariz., for defendant-appellant.

Roslyn O. Moore, Asst. U. S. Atty., Phoenix, Ariz., for the U. S.

Before CHOY and HUG, Circuit Judges, and GRAY *, District Judge.

PER CURIAM:

Francis Skinner appeals from his jury conviction of first degree murder in viola-

* The Honorable William P. Gray, United States District Judge for the Central District of Cali-

tion of 18 U.S.C. § 1153 and § 1111. We affirm.

## I

### Skinner's Confessions

A. Facts.

Thomas Cullison was shot to death on the Navajo Indian Reservation in Chinle, Arizona. Skinner was questioned about the shooting on July 9, and twice on July 10.

Before the first July 10 interview, FBI Agent Lara read Skinner his *Miranda* rights, and Skinner signed a waiver form. Before the second July 10 interview, investigators asked Skinner to accompany them to the police station for further questioning. Skinner signed a statement that he went to the station voluntarily. At the station, Agent Lara again advised Skinner of his rights, and Skinner signed another waiver form. That questioning session ended after one hour and forty-five minutes when Skinner stated he wanted to speak with an attorney before answering further questions. Skinner left the station alone.

The following morning, on July 11, the same investigators arrested Skinner for Cullison's murder. In the car on the way to the station, Agent Lara advised Skinner of his rights to remain silent and to consult a lawyer. Skinner said he understood his rights and agreed to answer questions. He confessed immediately thereafter.

At the station, Agent Lara again advised Skinner of his rights and asked Skinner if he would sign a waiver form and make another statement. Skinner agreed, signed the waiver, and confessed again. Skinner did not ask to end questioning or to speak with an attorney during the post arrest interrogations.

Skinner argues that the confessions should have been suppressed pursuant to *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *rehearing denied*, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), because he had requested counsel the day before.

fornia, sitting by designation.

### B. The Applicability of *Edwards.*

*Edwards* held that "an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation . . . until counsel has been made available to him . . . ." *Id.* 101 S.Ct. at 1884–85.

■ We find *Edwards* to be distinguishable. Edwards was under arrest and in custody continuously from the time he requested an attorney through the next day when the guard told him "he had to" talk and officers interrogated him again. *Id.* 101 S.Ct. at 1882. Skinner, however, was not in continuous custody.

Skinner went to the police station voluntarily on July 10. *See Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). He was free to leave the station after questioning, and did leave after he said he wanted to talk to a lawyer before answering more questions. *See United States v. Booth*, 669 F.2d 1231 (9th Cir. 1981); *United States v. Scharf*, 608 F.2d 323, 325 (9th Cir. 1979); *Lowe v. United States*, 407 F.2d 1391, 1397 (9th Cir. 1969). When Skinner left the station that afternoon, he had the opportunity to contact a lawyer or to seek advice from friends and family if he chose to do so.

### C. Waiver of *Miranda* Rights.

Because *Edwards* did not preclude further questioning, we must decide only whether Skinner waived his Fifth Amendment rights when he confessed to the killing. *Miranda v. Arizona*, 384 U.S. 436, 475–77, 86 S.Ct. 1602, 1628–1629, 16 L.Ed.2d 694 (1966).

■ Waivers of counsel and of the right of silence must be voluntary, knowing, and intelligent. *Edwards*, 101 S.Ct. at 1883–84; *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1932). A determination of waiver depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.; United States v. Rodriquez-Gastelum*, 569 F.2d 482, 488 (9th Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978).

■ Skinner's waiver was valid. He had heard and waived his *Miranda* rights twice the day before. Skinner knew from his experience the previous day that he could end the interrogation by asking again to meet with an attorney. Skinner said he understood his rights and agreed to answer questions. He has the equivalent to a high school diploma, and speaks English fluently. He agreed freely: agents did not pressure him to talk or to reconsider his assertion of the right to counsel. *See United States v. Rodriquez-Gastelum*, 569 F.2d at 488. We also note that Skinner confessed immediately after questioning began and that upon reaching the police station Skinner signed a waiver form. This signed waiver is additional strong evidence of a valid waiver. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

### II

### The Requested Voluntary Manslaughter Instruction

■ Skinner admitted at trial that he killed Cullison, but argued that he shot him in self-defense. The trial judge gave instructions covering first and second degree murder, voluntary manslaughter, and self-defense, but he refused to give an instruction on involuntary manslaughter. A defendant is entitled to a lesser-included offense instruction if: (1) a lesser included offense is identified within the charged offense; and (2) a rational jury could find the defendant guilty of the lesser-included offense but not guilty of the greater offense. *United States v. Johnson*, 637 F.2d 1224, 1233–34 (9th Cir. 1980); Fed.R.Crim.P. 31(c).

■ We do not believe the second requirement was met.[1] Involuntary man-

---

1. The first requirement was met: involuntary manslaughter is a lesser-included offense of murder and voluntary manslaughter. *United States v. Celestine*, 510 F.2d 457, 460 (9th Cir. 1975); *Barbeau v. United States*, 193 F.2d 945 (9th Cir.), *cert. denied*, 343 U.S. 968, 72 S.Ct. 1064, 96 L.Ed. 1364 (1952).

slaughter is an unintentional homicide. *See United States v. Keith*, 605 F.2d 462 (9th Cir. 1979). Skinner argues that the shooting was unintentional, because it was a lawful act of self-defense committed in an unlawful manner because Skinner used excessive force in defending himself. This "imperfect self-defense" theory could reduce an intentional killing by use of excessive force from murder to voluntary manslaughter, but not to involuntary manslaughter.[2] Torcia, *Wharton's Criminal Law* § 165 (14th Ed. 1979); LaFave and Scott, *Criminal Law*, § 53, p. 397, § 77, p. 583–84 (1st Ed. 1972). A killing committed in self-defense is, nevertheless, an intentional killing. If a rational jury found that Skinner used excessive force in shooting the victim, so that self-defense was not a complete defense, then it would have had to convict him either of murder or of voluntary manslaughter. It could not acquit him of those intentional offenses, but convict him of the unintentional offense of involuntary manslaughter.

## III

### Other Claims of Error

A. Skinner disputes the trial court's phrasing of several instructions. Instructions need not be given in the precise language requested by the defendant. *United States v. Lee*, 589 F.2d 980, 985 (9th Cir.), *cert. denied*, 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 382 (1979). The adequacy of jury instructions is determined by examining the instructions as a whole. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *United States v. Kaplan*, 554 F.2d 958, 968 (9th Cir.), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977). The refusal to give a requested instruction will not be overturned "if the jury charge as a whole adequately covers the theory of the defense." *Id.* The judge's instructions, given in clear and understandable language, contained the same points as Skinner's requested instructions.

B. The trial court's hearing on the voluntariness of Skinner's confessions was not inadequate under 18 U.S.C. § 3501. The trial court made a full and independent inquiry into the voluntariness of the confessions.

C. The trial court did not abuse its discretion by refusing to strike a Government witness's testimony on cross-examination that Skinner once pulled a gun on him, or by failing to give a limiting instruction regarding the testimony. Generally, a curative instruction should be given for improper evidence of the defendant's bad acts. *See United States v. Johnson*, 618 F.2d 60, 62 (9th Cir. 1980). The improper testimony in this case, however, was neither a product of Government misconduct nor developed through direct questioning by the Government. *United States v. Green*, 648 F.2d 587 (9th Cir. 1981); *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1979). Moreover, defense counsel called another witness who explained and mitigated Skinner's prior act. Because the motion was made later, an admonition to the jury only would have emphasized the testimony.

D. Neither did the trial court abuse its discretion in excluding evidence of why Skinner hated the victim. The reason Skinner hated Cullison was irrelevant to Skinner's defense that he feared Cullison enough to carry a gun when visiting Cullison. Rather, evidence of why Skinner hated Cullison would have harmed Skinner by tending to show premeditation and malice.

E. Agent Lara testified that Skinner left the police station on July 10 after he asked to speak with a lawyer before answering more questions. The trial court properly denied Skinner's mistrial motion made on the ground that Lara's testimony was a comment on Skinner's exercise of his Fifth Amendment right in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The court cautioned the jury to disregard the testimony as soon as Skinner's counsel raised the issue. *United States v. Wycoff*, 545 F.2d 679 (9th Cir.), *cert. denied*, 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556 (1977).

AFFIRMED.

---

**2.** To our knowledge, the theory has not been so applied in this jurisdiction.