THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RAY C. SPIVEY, Defendant-Appellee.

Second District   No. 2—91—0329

Opinion filed June 18, 1993.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, and Sherry R. Silvern, of Aurora, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Ray C. Spivey, was charged with one count of attempted murder, two counts of attempted aggravated criminal sexual assault, two counts of home invasion, two counts of aggravated battery, one count of residential burglary and three counts of armed violence against S.C. The defendant filed a motion to suppress statements he made to the police and an assistant State's Attorney while he was in custody at the Du Page County jail.

The State appeals from the court's order suppressing the defendant's statements. The issue on appeal is whether the statements made by the defendant were in violation of his sixth amendment rights when the defendant was questioned about an offense on which adversary proceedings had not been initiated but where the defendant had previously been formally charged in another possibly related case.

On October 1, 1990, Detective Sergeant David Day, who had been investigating the attempted murder of S.C. and separate offenses occurring one year earlier involving the victim L.F., received an anonymous phone call regarding the defendant. The L.F. case involved offenses at the same apartment complex as in the S.C. offense. The caller indicated that the defendant was involved in both the L.F. and S.C. cases and was in Mississippi. On October 2, Detective Day and Detective Patrick Quinn flew to Mississippi with a search warrant to

obtain a sample of the defendant's blood and to examine his finger pursuant to their investigation of the S.C. case.

Quinn read the *Miranda* warnings to the defendant. The defendant indicated that he understood his rights and was willing to speak with Detectives Quinn and Day. At that point, he either denied knowledge of the S.C. or L.F. offenses, or refused to talk about them. The defendant was driven to a laboratory, and his finger was examined.

On October 5, Detective Day obtained a complaint and arrest warrant for the defendant in connection with the L.F. case. The defendant was subsequently arrested and brought to the Du Page County jail.

Joseph Birkett, deputy chief of the felony division of the Du Page County State's Attorney's office, was then assigned to prosecute the defendant. On October 18, he went to the jail to view lineups related to the two cases. Also present was Detective Quinn. After the L.F. lineup, an S.C. lineup occurred. After that lineup, Birkett requested that the defendant's finger be photographed for the S.C. case. As the defendant entered a secured area where the camera was being set up, he approached Birkett. Birkett asked him to extend his hand for examination, and the defendant then asked if he had been identified and what was going on.

Birkett cautioned the defendant not to talk to him, explaining to the defendant that he was represented by a lawyer. The defendant insisted that he did not have a lawyer, that no one had been to see him and that he wanted to talk to Birkett. Birkett told the defendant that he could not talk about the pending L.F. case, but would talk to him regarding the S.C. case.

After Birkett gave *Miranda* warnings to the defendant, the defendant told Birkett that he understood his rights and orally waived them. During the subsequent questioning, Birkett made notes memorializing the defendant's statements. After 45 minutes of questioning, the defendant signed a *Miranda* waiver form. Thereafter, the defendant read Birkett's notes concerning statements, and he made several changes.

During the bench trial on the S.C. case, the defendant moved to suppress the statements made at the Du Page County jail. In granting the defendant's motion for suppression, the court found that the relationship between the L.F. case and the S.C. case was "close" and that the defendant was entitled to his sixth amendment right to counsel when he was questioned after the lineup. It further found that the authorities, rather than the defendant, had initiated the questioning in violation of the defendant's sixth amendment rights. Upon oral re-

quests by the State for clarification of the court's basis for granting the defendant's motion to suppress, the court noted that its decision was based on the defendant's sixth amendment rights and that the court did not reach the fifth amendment issues "because it was not necessary."

On appeal, the State initially argues that the sixth amendment right to counsel should not apply to the statements here, where there was no evidence that the two crimes were closely related. It notes that the offenses occurred a year apart and involved separate victims. The State further argues that the court's finding that authorities initiated the questioning was against the manifest weight of the evidence. Alternatively, the State argues that even if the authorities initiated the interrogation, the defendant's fifth amendment rights were not violated because he had only invoked his right to silence, not his right to have an attorney present.

We first address the State's argument that the defendant's sixth amendment right to counsel had not attached because the crimes were not closely related. The fifth amendment to the United States Constitution guarantees the right to have counsel present during custodial interrogation. (*People v. Martin* (1984), 102 Ill. 2d 412, 419.) Unlike the fifth amendment right to counsel, the right to counsel assured by the sixth amendment does not attach until adversary judicial proceedings have been initiated. (*Martin*, 102 Ill. 2d at 419.) The sixth amendment right to counsel does not attach in an uncharged case merely because the defendant's sixth amendment right to counsel has attached to an unrelated charge. (*Martin*, 102 Ill. 2d at 420-23.) However, in *Maine v. Moulton* (1985), 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477, the Supreme Court implicitly recognized that if the right to counsel has attached in a charged offense, then the sixth amendment right to counsel may also be triggered for any uncharged but closely related offense.

The United States Supreme Court has not yet explained how closely related two offenses must be for the sixth amendment rights to attach to elicitation of evidence on an uncharged offense. (See *People v. Clankie* (1988), 124 Ill. 2d 456, 463.) However, in *Clankie*, the Illinois Supreme Court held that the two offenses must be "extremely closely related" to trigger attachment of sixth amendment rights in an uncharged offense. *Clankie*, 124 Ill. 2d at 463-64.

In *Clankie*, the defendant's sixth amendment rights had attached with regard to several burglary counts with which he had been charged. Due to a conflict of interest with his attorney, the defendant was granted a new trial. Before the second trial, pursuant to a war-

rant for a wiretap device, the defendant was heard to make statements implicating himself in a burglary of a particular residence, on a particular date; he described his entry and what items he removed. The defendant, in fact, described a burglary that he had been charged with in the first trial, but where the information charged that it occurred on a different date, two weeks earlier. The defendant was subsequently charged with a burglary on that date described in the wiretap.

The defendant moved to suppress his statements, arguing that they were obtained in violation of his sixth amendment rights. The State argued that the defendant's sixth amendment rights had not attached because he had not been charged with the particular burglary in question when he made his statements. The court, however, noted that the two charges clearly referred to the same burglary, but that the charged dates were merely different. (*Clankie*, 124 Ill. 2d at 465.) Thus, the court concluded, under those facts, the defendant's sixth amendment rights attached to the latter charged offense before he was formally charged. *Clankie*, 124 Ill. 2d at 463-66.

A trial court's determination on a motion to suppress statements of the defendant will not be disturbed by a court of review unless the court abused its discretion or its decision is manifestly against the weight of the evidence. (*People v. Pecoraro* (1991), 144 Ill. 2d 1, 11.) Here, the record indicated that the crimes occurred over a year apart and were related only by the fact that they both occurred in the same apartment building and involved some similarity in their facts. Even the court noted that the dates of the offenses were different and that the crimes were different.

We find that the offenses were not "extremely closely related" and, thus, that the defendant's sixth amendment rights had not yet attached to the offenses at bar. (See *Clankie*, 124 Ill. 2d at 463-64.) We, therefore, find that the court erred in suppressing the evidence based on the sixth amendment right to counsel. See *Martin*, 102 Ill. 2d at 420-23.

The defendant makes no arguments on appeal predicated on the fifth amendment to support suppression. For the above reasons, we reverse the judgment of the circuit court of Du Page County and remand the cause for further proceedings.

Reversed and remanded.

McLAREN and QUETSCH, JJ., concur.